1819.

Moore
vs
White·

DECEMBER.

MOORE, *et al.* vs. WHITE.

G W being appointed trustee of the person and estate of J H, a lunatic, it was ordered by the chancellor, with the trustee's consent, that until further order he should use as his own the property, real and personal, of the lunatic, without accounting for the profits, he undertaking to account for and deliver the same, when called on by the chancellor's order, or in any other legal manner; and undertaking likewise to keep, lodge, clothe, and in every respect maintain the lunatic, comfortably and conformably to his rank, station, and the amount of his property——*Held,* that the expenses attending the birth and raising certain young negroes of the lunatic, as well as certain other charges appearing on the account exhibited by the trustee, and for which he claimed an allowance, are incidental to the trust and the possession of the property under it, and therefore cannot be allowed

Although certain proceedings in chancery are informal and irregular as to the admission of parties to defend a claim improperly exhibited by a trustee against the estate of a lunatic; yet, as the decree of the chancellor, allowing such claim, if unreversed, would be final and conclusive in its operation on those of the representatives of the deceased lunatic, that have become parties to it.—*Held,* that the appeal made by those representatives, from the chancellor's decree, be sustained, and that the decree be reversed.

APPEAL from the Court of Chancery. *Jonathan Hickman* having been regularly declared a lunatic, and *White,* the Appellee, appointed his trustee, the following order was passed on the 28th of October 1802, by

HANSON, Chancellor. *Gowan White,* trustee of *Jonathan Hickman,* a lunatic, having filed his bond, and returned an inventory, list or schedule, as by the chancellor directed, is with the said trustee's contents, ordered, that until further order he the said *Gowan White* shall use as his own the property, real and personal, of the said *Hickman,* without accounting for the profits, the said *White* undertaking to account for and deliver the same when called on by the chancellor's order, or in any other legal manner; and undertaking likewise to keep, lodge, clothe, and in every respect maintain the said lunatic, comfortably and conformably to his rank, station, and the amount of his property.

On the death of the lunatic, which happened on the 21st of December 1815, the trustee in passing his final account charged, among other things, for the raising of sundry negro children belonging to the estate of the lunatic, and which were born after his trusteeship, and also for the midwife's fees. *Jonathan Moore,* and others, (the appellants,) on the 19th of February 1816, filed objections against the said account, alleging that there are negro men to hire out to the amount of $400 at least, and negroes enough left to cultivate the land. The chancellor referred the case to the auditor to report thereon. The auditor by his report allowed the above charges; and the chancellor, on the 17th of December 1816, ordered that the report of the auditor be heard at the ensuing term, provided a copy of this or-

der was served on *Jonathan Moore*, (one of the persons who have objected,) before the 1st of February next.

1819.

Moore
vs
White

KILTY, Chancellor, (March 8th. 1817.) It appears that a copy of the order of the 17th of December last, has been served on *Jonathan Moore*, as therein directed, and no exceptions have since been filed to the report. The order passed by the late chancellor in 1802, was conformable to the established principle of committing the care and comfort of the lunatic, in preference to the interest of those who might be his representatives. This order would prevent an allowance for the possible hire of negroes, mentioned in the objections filed on the 19th of February 1816, if there was evidence to support such a charge. There are some cases in which the increase of negroes is considered as the profits. But whether the trustee could claim them or not, their maintenance has occasioned an extraordinary expense not necessary for the support of the lunatic, by which the estate is so far benefited. The other charges also were unconnected with the support of the lunatic. The account amounting to $1272·60 is allowed.

*Moore*, by his petition filed on the 10th of March 1817, stated that he was unavoidably prevented from attending earlier to except to the account of the trustee, and that he was prepared to prove, by legal and competent evidence, the injustice and unreasonableness of said account. That he is prepared to prove that the lunatic was not maintained and supported according to his property and station in life, but on the contrary, in a very uncomfortable manner. That the trustee ought not to be credited with the support and maintenance of the negroes born subsequent to the commencement of the trust, because he is able to prove that they were maintained by the hire of their respective mothers. On behalf of himself, and of the other representatives of *Jonathan Hickman*, he prayed the chancellor to open the order passed upon the report of the auditor, &c.

The chancellor on the 10th of March 1817, opened his order of the 8th instant, and ordered that depositions be taken on notice, &c. Under this last order sundry depositions, and other papers, were filed by the parties. By an inventory returned to the orphans court on the 13th of February 1816, by *White*, as the administrator of *Hickman*, the personal estate was appraised to $7838 95, including fifteen negroes born during the time *White* was the trustee of *Hickman*, appraised to $1640. The lands of the lunatic, as found by the inquisition of the jury, they declared to be of the yearly value of £40.

KILTY, Chancellor, (July Term 1817.) On considering the depositions filed, I do not see any reason to alter the determination made in March last. The paying for the raising of the young children by the hire of their mothers, is in effect the same as a payment in money, their labour

or hire being thereby withdrawn from the trustee. The complaint of want of care and attention to the lunatic, is not supported on weighing the whole of the testimony, and seems also irrelevant to the present object. The petition is therefore dismissed with costs, and the account stated by the auditor is again allowed. From this order *Moore* and others appealed to this court.

The case was argued before EARLE, JOHNSON, and DOR-SEY, J.

*Boyle*, for the Appellants, stated that the only question was, whether the trustee of the lunatic should be allowed for raising the slaves, born after he was appointed, as the estate was sufficient to maintain them, and did maintain them? He contended, that under the order of chancellor of the 28th of October 1802, the trustee took the real and personal estate of the lunatic, under the express condition that he was to support the lunatic, and that he was bound to raise and maintain the negroes to be born, and to be at all the expenses in consideration of the profits and advantages to be derived from the estate. Upon this condition he accepted the trust.

*Magruder*, for the Appellee, contended, that the trustee was to support the lunatic out of the profits of the estate, but that he was not bound to raise and maintain the young slaves. He also contended, that no appeal would lie in this case; that it was not known who *Jonathan Moore*, and others, were, or that they had any right to object to the claim of the trustee. If they had a right, they should have filed their bill, calling upon *White* to account, who would set up the allowance made to him, and then the question would come properly before the court, whether the chancellor should have made the allowance or not. It is not regular to appeal from an order of the chancellor, making an allowance to a trustee.

*Stephen.* in reply, to show that the appeal would lie, referred to the act of 1785, ch. 72, s. 27.

EARLE, J. delivered the judgment of the court. From the proceedings it appears that the estate of the lunatic was amply sufficient for his support. Of this the trustee must have been sensible when he consented to the order of the chancellor of the 28th of October 1802, the plain meaning of which is, that the trustee should use the property of the lunatic as his own, without being held to account for the profits of it, and should keep and provide for the lunatic in a manner suitable to his situation in life, paying all incidental expenses, and looking to the clear profits for compensation for his care and trouble. The court consider the expenses attending the birth and raising the young negroes of the lunatic, as well as the other charges appearing on the ac-

count exhibited by the trustee, as incidental to the trust, and the possession of the property under it, and are therefore of opinion, that the chancellor misjudged in confirming the report of the auditor which allowed those charges.

The proceedings in chancery in this cause are informal and irregular, but it appears to the court, that the chancellor's decree, unreversed, would be final and conclusive in its operation, on those of the representatives of the deceased lunatic that have become parties to it.

The court therefore decide, that the decree of the court of chancery be reversed, with costs to the appellants, in this court and in the court of chancery.

DECREE REVERSED.